[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Before this court is the application for a prejudgment remedy of the plaintiff, David Silvia. The plaintiff was terminated from his employment with the defendant, United Abrasives, on December 7, 1998. In a complaint, dated January, 1999, the plaintiff claims that he was wrongfully discharged. He files this Application for a Prejudgment Remedy to secure the sum of $750,000.
The plaintiff claims that he was not terminated for cause and, therefore, under the terms of his contract, is entitled to one full year of salary, his 1998 bonus, benefits and outplacement services. Also, the plaintiff claims that the defendant violated the General Statutes by withholding benefits to which he is entitled and, therefore, he is entitled to double damages and attorneys fees.
In opposition, the defendant asserts that it terminated the plaintiff for cause, and therefore, the plaintiff is not entitled to judgement or a prejudgment remedy.
In order to determine whether or not the plaintiff is entitled to a prejudgment remedy, this court makes the following findings of fact. CT Page 11861
The defendant is a manufacturer of bonded abrasives. In 1996, it hired the plaintiff to fill the position of Vice President of Sales and Marketing. The president of United Abrasives, Eric Marziali, met with and negotiated the employment contract with the plaintiff. The result is a letter, dated August 27, 1996. There is no dispute between the parties that this letter represents the employment contract.
The contract provides, inter alia, that if the plaintiff was terminated for anything but "cause", he would be entitled to one full year of salary, benefits, and outplacement services. Cause in the contract is defined as: "failure to achieve agreed to performance goals; failure to devote . . . full time and effort to . . . employment with the company; failure to maintain professional conduct with customers, co-workers and subordinates; serious misconduct; conviction for a felony."
The court received insufficient evidence regarding what the "agreed upon performance goals" were, if any. There was also no evidence to support a finding that the plaintiff failed to devote his full time and effort to his employment. Although, in its post hearing brief, the defendant references behavior which it viewed to be serious misconduct, this court dismisses these references as unsupported by the evidence. Neither are there any facts which would indicate that the plaintiff has been convicted of a felony. Rather, the defenses asserted to the plaintiff's claim focus on the plaintiff's interactions with customers, co-workers and subordinates. In essence, the defendant claims that the plaintiff behaved unprofessionally and was terminated for cause.
Although the contract, itself, does not define what constitutes professional conduct, during the hearing both the plaintiff and the defendant's president agreed that the phrase would include: honesty, integrity, ethical behavior, being polite, being open minded, maintaining composure, respecting others, respecting independent sales reps, not insulting or intimidating others, not creating a hostile work environment, not engaging in serious misconduct, or felonious misconduct.
As Vice President of Sales and Marketing, the plaintiff was responsible for the United States and the Canadian markets, as well as export markets and sales associated with converter markets. His position required frequent travel and frequent meetings with independent sales representatives whom the defendant used to sell its product. As Vice President of Sales, CT Page 11862 the plaintiff was to coordinate sales efforts and inspire the sales representatives to vigorously and enthusiastically represent the defendant's line of products in the market.
A number of individuals testified that they believed that the plaintiff, at various points during his interactions with them, had violated one or more of the rules of professional conduct. During the hearing, this court, at times, was amazed at the level of, what appeared to be, hyper-sensitivity of these individuals. Nonetheless, the cumulative effect was to credibly paint the portrait of an administrator who was failing to inspire the workforce, and in the process intimidating them, needlessly. The portrait painted was of a man who continually and consistently behaved unprofessionally.
Randy Langrebe, a sales representative who had worked on the defendant's account for a number of years, testified that he had been offered territory in Iowa by the plaintiff. This, Mr. Langrebe testified, violated the professional code of their industry. Additionally, Mr. Langrebe testified that the plaintiff had told him to shut up in front of customers and told disparaging jokes about sales representatives while working with him.
Ann Lucente, a 15-year-employee of the defendant, testified that she observed troubling behavior, too. The plaintiff smoked his cigar at dinner despite a sales representative's request that he not. Ms. Lucente received a number of telephone calls from representatives all over the country complaining about the plaintiff. She personally spoke with the plaintiff about his conduct, after which the phone calls lessened. Eventually, though, there were problems again.
Chris Roberts testified that the plaintiff slammed his fists on the desk during one conversation and ordered Roberts not to discuss a certain topic. Overall, according to Roberts, the working relationship was very poor and the plaintiff was unapproachable. Mr. Roberts testified that the plaintiff was demeaning and belittling to him, making jokes about his height and embarrassing him. Mr. Roberts has worked with the defendant since 1994.
Chris Kimball testified that the plaintiff had a difficult time adjusting to the company policy of having no secretaries. The plaintiff was irritated by this and abrasive about it. At the trade shows, she was surprised to observe the negative reaction CT Page 11863 of the sales representatives to the plaintiff. She witnessed the plaintiff berating individuals. Ms. Kimball had been with the company since 1995.
Eric Marziali, the president, testified that he witnessed unprofessional behavior on the part of the plaintiff. He observed the plaintiff intimidating people and saying demeaning things to them. He also received numerous complaints about the conduct of the plaintiff. His concerns were heightened by his observation of the difference in the conduct and demeanor of the sales representatives after the plaintiff had been in his position for approximately a year. Mr. Marziali testified that he counseled the plaintiff a number of times and he counseled the staff on how to deal with the plaintiff. Even after this counseling, things did not improve.
The plaintiff attempted to rebut the defendant's witnesses by presenting the testimony of Mr. James Lobban, former Vice President of Manufacturing. Mr. Lobban testified that he never witnessed Mr. Silvia behaving in an intimidating or abusive fashion. While this testimony seemed sincere, this court finds that Mr. Lobban did not have the opportunity nor the obligation to fully observe the plaintiff's interactions with his staff and co-workers. For this reason, the court believes that the testimony of Mr. Lobban did not rebut the evidence presented by the defense.
The plaintiff also submitted an affidavit to rebut many of the facts presented by the defense. This court finds that this affidavit, like Mr. Lobban's testimony, did not rebut the defendant's case.
The plaintiff has failed to prove probable cause for his claims of breach of contract; violation of § 31-72 of the General Statutes; or negligent infliction of emotional distress. The evidence suggests the plaintiff was rude, abusive, aggressive and intimidating to those with whom he worked, including employees of the defendant and independent contractors who worked with the defendant, individuals this court deems to be "co-workers". His style certainly clashed with that of the other members of the sales and employment team hired to work for and with the defendant. Whether the clash in style and demeanor constitutes a "failure to maintain professional conduct" is the issue of fact which must ultimately be determined by the fact-finder. For purposes of this application, the court finds, taking the defenses into account, there is no probable cause to find the CT Page 11864 plaintiff was terminated without cause.
Accordingly, the plaintiff's request for a prejudgment remedy is denied.
Angela Carol Robinson Judge, Superior Court